Sucesores de C. y J. Fantauzzi, Peticionaria y Apelante, *v.* La Asamblea Municipal de Arroyo, Demandada y Apelada.

Apelación procedente de la Corte de Distrito de Guayama en recurso de *certiorari.*

No. 2558.—Resuelto en abril 28, 1922.

Contribuciones Municipales—Arbitrio sobre Elaboración de Azúcar—Facultades de los Municipios para Imponer Contribuciones.—Atendidos los términos de los artículos 49, inciso "*f*" y 26, inciso 4, de la Ley Municipal como quedó enmendada por la Ley No. 9 de mayo 12, 1920, es preciso concluir que una contribución especial de seis centavos impuesta para mejoras y escuelas públicas por la asamblea municipal sobre cada quintal de azúcar elaborado en la municipalidad es una contribución legal que si es necesario puede considerarse como previamente provista y definida por la Asamblea Legislativa de Puerto Rico como exige la sección 3 del Acta Orgánica, la cual no requiere que todas y cada una de las contribuciones que autoriza deban definirse expresa y específicamente.

Id.—Legislatura de Puerto Rico—Facultades Delegadas en los Municipios para Imponer Contribuciones.—De acuerdo con las secciones 25, 37 y otras del Bill Jones el Congreso de los Estados Unidos ha investido a la Legislatura de Puerto Rico de todos los poderes legislativos compatibles con una forma republicana de gobierno semejante a la de cualquier Estado o Territorio, siendo las únicas limitaciones las corrientes, y aquellas que expresamente provee la Ley Orgánica; por lo que, el derecho de la Legislatura de Puerto Rico a dotar a los municipios de poderes para imponer contribuciones no es diferente al que tiene cualquier Legislatura continental con las solas limitaciones, si algunas, contenidas en la sección 3 del Acta Orgánica.

Id.—Arbitrios sobre Elaboración de Azúcar.—Un tributo especial de seis centavos impuesto por una asamblea municipal sobre cada quintal de azúcar elaborado en la municipalidad no es una contribución directa sobre la propiedad y sí un arbitrio cuya adopción pueden legalmente hacer los municipios en virtud del poder general de imponer contribuciones que les confiere la Ley Municipal en sus artículos 49 y 26, incisos "*f*" y 4 respectivamente.

ID. — PATENTES MUNICIPALES. — Independientemente de la contribución que por patente municipal puede imponer un municipio a una central azucarera por la explotación del negocio, puede imponerle un arbitrio por la manufactura del azúcar.

ID.—CONTRIBUCIONES UNIFORMES.—Un arbitrio municipal que es uniforme en toda la municipalidad cumple con la Ley Orgánica en cuanto exige uniformidad en la imposición de contribuciones.

ID. — ORDENANZAS MUNICIPALES — TÍTULO DE UNA ORDENANZA MUNICIPAL. — No puede estimarse que es nula una ordenanza municipal imponiendo un arbitrio sobre la manufactura de azúcar por no especificar claramente su objeto en su título cuando éste dice así: ''Ordenanza para imponer una contribución especial sobre cada quintal de azúcar manufacturada en la municipalidad de Arroyo, Puerto Rico, y para otros fines.''

ID.—APROBACIÓN DE ORDENANZAS MUNICIPALES.—Una ordenanza municipal no es nula por el hecho de haber sido aprobada por la asamblea sin que hubiera sido referida previamente a algún comité de la misma y menos cuando como en el presente caso, fué aprobada por unanimidad.

ID.—IRRAZONABILIDAD DE ORDENANZAS MUNICIPALES.—Una ordenanza municipal imponiendo un arbitrio de seis centavos por cada quintal de azúcar elaborado en la municipalidad para dedicar la recaudación a mejoras y escuelas públicas no puede reputarse irrazonable a menos que se demuestre que es confiscatoria o tan inconveniente que se vería su irrazonabilidad.

Los hechos están expresados en la opinión.

Abogado de la apelante: *Sr. T. Bernardini.*

Abogado de la apelada: *Sr. C. Domínguez Rubio.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

La Asamblea Municipal de Arroyo aprobó una ordenanza que copiada literalmente dice como sigue:

''ORDENANZA para imponer una contribución especial sobre cada quintal de azúcar manufacturado en la Municipalidad de Arroyo, P. R., y para otros fines.—Por cuanto, la administración municipal de Arroyo, P. R. necesita arbitrar recursos para el desarrollo de un plan de mejoras públicas y edificar casas apropiadas para la instalación de escuelas para el mejor desarrollo y fomento de la instrucción pública.—Por tanto, ordénase por la Asamblea Municipal de Arroyo, P. R.

''Sección 1ª.—A partir de la fecha en que empiece a regir esta ordenanza y durante el término que resta de la actual zafra de 1921, y zafras subsiguientes, se impone y recaudará por el Comisionado Municipal de Hacienda de este municipio, una contribución especial de seis centavos por cada quintal de azúcar o fracción de quintal

fabricado en cualquier factoría dedicada a la elaboración de azúcares dentro de esta municipalidad. *Disponiéndose,* que la contribución referida será invariable mientras el precio de cada quintal de azúcar en el mercado no exceda de cinco dollars; pero por cada dollar o fracción de dollar que se aumente en el precio de cada quintal de azúcar sobre el precio de cinco dollars, el Comisionado de Hacienda referido cobrará un centavo y cuarto adicional.

"Sección 2ª.—Toda central o factoría dedicada a la fabricación de azúcares en la jurisdicción de Arroyo, P. R., deberá presentar al Comisionado de Hacienda de este municipio dentro de los primeros diez días del mes siguiente al en que empiece a regir esta ordenanza y sucesivamente todos los meses hasta terminar la zafra del presente año, y zafras subsiguientes una liquidación exacta del número de quintales de azúcar fabricados mensualmente por dicha central o factoría.

"Sección 3ª.—Las liquidaciones a que se refiere el precedente articulado, deberán hacerse o presentarse bajo afirmación o declaración jurada.

"Sección 4ª.— El Comisionado de Hacienda del Municipio de Arroyo, P. R., queda facultado ya por sí o por conducto de cualquiera de los funcionarios de su departamento para investigar de tiempo en tiempo, si las liquidaciones corresponden fielmente con el número de quintales de azúcar fabricados por cada central o factoría.

"Sección 5ª.—Las contribuciones que por tal concepto ingresen en el Tesoro Municipal se destinarán a obras y mejoras de utilidad pública, disponiéndose que el cincuenta por ciento del montante total de la misma, se dedicará a la construcción y ampliación de edificios escolares y el 1/10 por ciento ingresará en los fondos ordinarios municipales, para engrosar las partidas de gastos ordinarios de la administración.

"Sección 6ª.—Se autoriza por la presente al Concejo de Administración de Arroyo, P. R., para que promulgue los reglamentos que fueren necesarios para poner en vigor esta ordenanza.

"Sección 7ª.—Cualquier persona, sociedad, asociación o corporación, que infringiere o hiciere infringir las prescripciones de esta ordenanza, o que tratare de burlar sus preceptos, valiéndose de falsas propagandas o maliciosas insinuaciones, o por cualquier otro medio ilegal, violare o hiciere violar las disposiciones de la misma, o que suministrare datos falsos, para el cobro de la contribución que por esta ordenanza se crea, será denunciada y convicta que fuere se le impondrá una multa mínima de cincuenta dollars, o prisión mínima

por un período de quince días o ambas penas a discreción del tribunal competente.

"Sección 8ª.—Toda ordenanza o resolución en conflicto con la presente será por ésta derogada.

"Sección 9ª.—Esta ordenanza empezará a regir tan pronto pase por los trámites legales y haya sido publicada en un periódico de general circulación de acuerdo con la ley.

"Certifico: que la preinserta ordenanza fué aprobada por la Asamblea Municipal de Arroyo, P. R. por el voto afirmativo de cinco de sus miembros y en la sesión celebrada el día nueve de marzo de mil novecientos veintiuno, y que la misma es una copia fiel y exacta de su original a que me remito. *Certifico, además*, que dicha ordenanza ya ha sido publicada en el periódico 'El Mundo.' Y a petición del Sr. José M. Fantauzzi, expido la presente copia certificada, hoy día primero de abril de mil novecientos veintiuno, estampando en ella el sello de este municipio.—(f) Juan C. Dávila.—Secretario de la Asamblea.—Vo. Bo. (f) Rodolfo Burgos, Presidente."

La apelante quejándose de esta ordenanza presentó una solicitud a la Corte de Distrito de Guayama interesando un auto de *certiorari*, el cual fué librado. Alegaba la petición en sustancia, que la peticionaria era una sociedad y dueña de una factoría para fabricar azúcar, conocida con el nombre de "Central Lafayette;" que la peticionaria pagaba al municipio una patente por su industria de fabricar azúcar; que la peticionaria había pagado contribución correspondientes a un volumen de negocios de $1,700,000, y que la peticionaria está comprendida bajo el grupo "C" de la Ley No. 26 de 1914, página 181 de las leyes de ese año. La peticionaria no alega que la ordenanza le perjudica pero esto fué supuesto tanto por la peticionaria como por la corte al dictar sentencia. La corte, en su sentencia de julio 26, 1921, declaró que la ordenanza era válida, con excepción de una cláusula de ella. Esta excepción no se relaciona con las cuestiones que han sido promovidas.

Este caso, en unión de otros varios que consideraremos a la vez, envuelve el derecho que tiene una municipalidad para imponer contribuciones por virtud de la Ley Municipal

como quedó enmendada por la Ley No. 9 de mayo 12, 1920, y particularmente por la sección 49 de esa ley, aunque la sección 26 es también aplicable.

"Artículo 49.—Los ingresos municipales consistirán—

"(*a*) En las rentas y productos de los bienes del municipio;

"(*b*) En el producto de cualquier contribución sobre bienes muebles e inmuebles del distrito municipal con la correspondiente autorización de la Asamblea Legislativa, siempre que dichos bienes no se hallaren exentos por las leyes de los Estados Unidos o por alguna ley votada por la Asamblea Legislativa;

"(*c*) En cualquier recargo de la contribución sobre la propiedad imponible del municipio, siempre que así se acordare por las dos terceras partes de la asamblea municipal.  Dicho recargo no podrá exceder del uno por ciento, computándose cualquier contribución adicional autorizada al presente o que en lo futuro se autorice.

"Tal recargo sólo podrá destinarse a amortización de empréstitos ya contratados o que se contraten en lo sucesivo, al fomento de la instrucción elemental, a la construcción de carreteras municipales o inter-municipales, acueductos, plantas eléctricas, alcantarillados, construcción de hospitales, cementerios, asilos de ancianos y huérfanos, sanatorios de tuberculosos, manicomios y reformatorios, plazas de mercado, pavimentación, asfaltado y arbolado de calles, muelles y malecones, casas escuelas y para maestros, granjas agrícolas, casas para ser vendidas a trabajadores a largos plazos, erecciones de aldeas, diques para evitar inundaciones, lavaderos públicos y edificios para oficinas municipales.  Dicho recargo de la contribución sobre la propiedad se recaudará por el Tesorero de Puerto Rico, sirviendo de autoridad al efecto una copia certificada de la ordenanza que adoptare la asamblea municipal.  Este recargo se impondrá tomando como base la tasación hecha por el Departamento de Hacienda, para ser recaudado solamente durante el año económico subsiguiente; salvo en casos de empréstitos, en que regirá durante el tiempo que sea necesario hasta cubrir el pago del principal e intereses.  En todos los casos, el recargo no podrá cobrarse en el mismo año económico en que fuere votado por la asamblea municipal; *Disponiéndose,* que la ordenanza municipal imponiendo cualquier contribución adicional sobre la valoración de la propiedad deberá estar en poder del Tesorero de Puerto Rico el día 15 o antes del mes de marzo.

"(*d*) La contribución en concepto de patentes establecida por la Ley No. 26 de 28 de marzo de 1914, titulada 'Ley para autorizar a

los municipios de la Isla de Puerto Rico a imponer y cobrar en concepto de patentes una contribución anual para cubrir las atenciones de su presupuesto, y para otros fines,' la cual por la presente se declara en vigor;

"(*e*) Multas y costas impuestas por los juzgados de paz;

"(*f*) Cualquier otro impuesto, arbitrio o contribución que se decretare por las dos terceras partes de los miembros de la asamblea municipal siempre que el objeto o materia de la contribución no lo fuere de algún impuesto federal o insular;

"(*g*) Intereses sobre fondos en depósito.

"*Disponiéndose,* que los municipios podrán reintegrar total o parcialmente cualesquiera fondos que hubiesen ingresado indebida o ilegalmente en el tesoro municipal, cualesquiera que fuere el origen de tales fondos, mediante resolución al efecto aprobada por la asamblea municipal o por el concejo de administración, no estando aquella en sesión.

"Artículo 26.—Corresponderá privativamente a la asamblea municipal—

"1. La aprobación del presupuesto de ingresos y gastos;

"2. La venta, permuta, gravamen o arrendamiento de propiedades inmuebles municipales, y la construcción de teatros; *Disponiéndose,* que el concejo de administración podrá autorizar el arrendamiento de teatros municipales por un período no mayor de sesenta (60) días;

"3. La autorización de empréstitos;

"4. La imposición de contribuciones y arbitrios de cualquier clase;

\*          \*          \*          \*          \*          \*          \*

Hemos elegido este caso para nuestra discusión principal por ser su alegato el que está en mejor forma legal y presenta el ataque más completo al derecho de un municipio para aprobar una ordenanza de esta naturaleza o para imponer una contribución como esta. Discutiremos, sin embargo, los errores en orden algo distinto al que se observa en los señalamientos.

No. 1.—El primer error alegado que consideraremos es el número 4, en el señalamiento de la apelante, a saber:

"La corte erró al no estimar que el objeto y materia de la ordenanza aquí impugnada no había sido 'provisto y definido' por la Legislatura."

La apelante sostiene que la municipalidad no tenía ningún derecho a imponer esta contribución por no haber sido antes "provista y definida" por la Legislatura de Puerto Rico. Esta supuesta limitación ha de hallarse en la sección 3 de la Ley Orgánica, a saber:

"Artículo 3.—No se impondrá ni cobrarán derechos sobre exportaciones de Puerto Rico; pero podrán imponerse para fines de los gobiernos insular y municipal, respectivamente, según se provea y defina por la Asamblea Legislativa de Puerto Rico, contribuciones e impuestos sobre la propiedad, rentas internas, derechos sobre licencias y por franquicias, privilegios y concesiones; y en los casos en que fuere necesario anticipar contribuciones y rentas y proteger el crédito público, podrá Puerto Rico o cualquiera de sus municipios emitir bonos y otras obligaciones según se provea por ley; *Disponiéndose, sin embargo,* que ninguna deuda pública de Puerto Rico o de cualquiera subdivisión o municipio del mismo, será autorizada o permitida por más del siete por ciento de la tasación total de su propiedad, y todos los bonos emitidos por el Gobierno de Puerto Rico, o por su autoridad, estarán exentos de contribución por el Gobierno de los Estados Unidos, o por el Gobierno de Puerto Rico o de cualquiera subdivisión política o municipal del mismo, o por cualquier Estado, o por cualquier condado, municipio u otra subdivisión municipal de cualquier Estado o Territorio de los Estados Unidos, o por el Distrito de Columbia. Al computar la deuda del pueblo de Puerto Rico, no se contarán los bonos emitidos por el pueblo de Puerto Rico garantizados por una suma equivalente de bonos de las corporaciones municipales o juntas escolares de Puerto Rico."

La apelante se expresa así:

"A nuestro juicio el Congreso lo que ha querido evitar es que la Legislatura de Puerto Rico delegue, ya en el Tesorero de Puerto Rico o cualquier otro organismo del Gobierno Insular, ya en los municipios, la facultad de imponer contribuciones sobre objetos, materias, propiedades, artículos de comercio que no hayan sido previamente especificados o provistos y definidos por la propia Legislatura."

En el caso No. 2507 la Corte de Distrito de San Juan se expresó en estos términos:

"Concretándonos a la facultad de imponer contribuciones, nues-

tra Ley Orgánica, en el artículo 3 ya citado, faculta a la Asamblea Legislativa para *proveer* y *definir* las contribuciones e impuestos para los gobiernos insulares y municipales. En una palabra, cualquier contribución que un municipio desee imponer habrá de estar previamente decretada y *definida* por la Asamblea Legislativa de Puerto Rico. Y no sólo es esa la ley desde que rige el Acta Jones, sino que era así dentro del régimen Foraker. Por virtud de la sección 1869 de los Estatutos Revisados de Puerto Rico, concedió la Legislatura a los municipios facultad para derivar sus rentas de ciertos recursos que se enumeraban 'fuera de los cuales no podría ponerse contribución o arbitrio sin estar para ello autorizado por esta ley y por las leyes de Puerto Rico.' Más tarde, por la Ley de 1914, autorizando la imposición de ciertos derechos de patente, también se concedió a los municipios autorización expresa para el cobro de impuestos claramente definidos.

"Creemos, pues, que la facultad concedida a virtud del inciso F del artículo 49 de la nueva Ley Municipal para el cobro de 'cualquier otro impuesto, arbitrio, contribución que se decretare por las dos terceras partes de los miembros de la asamblea municipal, siempre que el objeto o materia de la contribución no lo fuere de ningún impuesto federal o insular,' está subordinada al principio general, ya reconocido por la Legislatura antes de regir el Acta Jones y expresamente reiterada en su artículo 3, de que 'tal impuesto o contribución debe ser previamente *decretado* y *definido* por la Asamblea Legislativa de Puerto Rico.' El impuesto de diez centavos por cada quintal de azúcar, acordado por la Asamblea Municipal de Carolina, no ha sido decretado ni definido por la Asamblea Legislativa de Puerto Rico. No cabe otra definición que la expresa, pues definir es determinar, fijar, describir, caracterizar, distinguir, con claridad y precisión."

Convenimos con la apelante en el caso número 2507, en el cual la decisión fué en contra de la contribución impuesta, en que el poder para imponer contribuciones puede prescribirlo y definirlo completamente la Legislatura sin hacer una enumeración específica o expresa de las contribuciones que autoriza. La sección 3 de la Ley Orgánica, *supra,* no dice, como se sugiere, que todas y cada una de las contribuciones que han de imponerse deben definirse expresa y específicamente. Si yo digo a una persona que quiero reservarme

ciertas habitaciones de mi casa, pero que ella queda libre para ocupar y tener cualquiera otra parte de esa casa, esto es una definición y disposición completa de la parte de la casa que habrá de ocupar. No hay otro medio que sepamos en lógica o legislación que cubra mejor el campo que ha de abarcarse que semejante disposición restante, y éste, hasta cierto punto, fué el método observado por la Ley Orgánica en cuanto a contribuciones, toda vez que en la sección 3, al empezar se fijó una prohibición a nuestra Legislatura por el Congreso y lo demás respecto a contribuciones quedó sin restricción. No hay ninguna duda sobre la esfera de acción en que puede girar el municipio. Por la sección 49 (*f*) se prohibe al municipio imponer cualquier contribución previamente impuesta por los gobiernos nacional o insular, pero está libre para imponer cualquiera otra contribución. Si es esta una disposición sabia de la Legislatura no es materia de investigación judicial con tal que exista el derecho a delegar el poder de imponer contribuciones a las municipalidades. *Patton* v. *Brady,* 184 U. S. 608, *post; State* v. *Irvin,* 35 S. E. 430; *State* v. *Worth,* 21 S. E. 204. La autoridad para conferir el poder de imponer contribuciones a los municipios dentro de límites constitucionales prácticamente no se pone en duda. El derecho ha existido siempre y nace de las necesidades del caso. 19 Ruling Case Law, 943 *et seq.;* 28 Cyc. 1658 *et seq.; Henderson Bridge Company* v. *Henderson City,* 173 U. S. 592; 37 Cyc. 725; notas al caso de *Mayor, Etc. of Baltimore* v. *State,* 74 A. D. 592.

Volvamos a la interpretación de la sección 3 de la Ley Orgánica. Se alega, citándose la opinión del Juez de la Corte de Distrito de los Estados Unidos para Puerto Rico en el caso de *The Societé Anonime des Sucreries de Saint Jean* v. *Caldas,* resuelto en abril 23, 1921, que el plan del Acta Jones era incompatible con la extensión del gobierno propio local en materia de contribuciones por los municipios. Hemos leído la Ley Orgánica con gran cuidado. La sección 25 pres-

cribe lo siguiente: "Todos los poderes legislativos locales en Puerto Rico, con excepción de lo que de otro modo se disponga en esta ley, residirán en una Asamblea Legislativa, que constará de dos Cámaras: una, el Senado, y la otra, la Cámara de Representantes; y las dos Cámaras se designarán 'La Asamblea Legislativa de Puerto Rico.' " La sección 37 de la referida ley es como sigue: "La autoridad legislativa estatuída por la presente, se aplicará a todos los asuntos de carácter legislativo que no sean localmente inaplicables, incluyendo la facultad de crear, consolidar y reorganizar los municipios, según fuere necesario, y proveer y derogar leyes y ordenanzas para los mismos; y también la facultad de alterar, reformar, modificar o derogar cualquiera o todas las leyes y ordenanzas, de cualquier clase, actualmente vigentes en Puerto Rico o en cualquier municipio o distrito del mismo, hasta donde dicha alteración, reforma, modificación o derogación fuere compatible con las disposiciones de esta ley.

"No se creará por la Asamblea Legislativa ningún departamento ejecutivo no provisto por esta ley; pero la Asamblea Legislativa podrá consolidar departamentos, o suprimir cualquier departamento, con el consentimiento del Presidente de los Estados Unidos."

Creemos que bajo estas secciones y otras el Congreso de los Estados Unidos ha investido a la Legislatura de Puerto Rico de todos los poderes legislativos compatibles con una forma republicana de gobierno que cualquier Estado o Territorio posee y que las únicas limitaciones al poder de la Legislatura son las corrientes y aquellas que expresamente están contenidas en la Ley Orgánica. La Corte Suprema de los Estados Unidos en el caso de *Christianson* v. *King County*, 239 U. S. 356, 365, al considerar el derecho del anterior Territorio de Washington para decretar leyes relativas a la adquisición por el Estado de bienes de difuntos (*escheat*) dijo que con sujeción a las restricciones contenidas en la Ley

Orgánica a la Legislatura Territorial generalmente se le ha encargado poner en vigor todos los sistemas de leyes generales. Nuestra Ley Orgánica es tan amplia respecto a la facultad legislativa como cualquier otra Ley Territorial. El derecho de nuestra Legislatura a dotar de poderes para imponer contribuciones a los municipios, no es pues diferente al que tiene cualquiera otra Legislatura, a menos que tal limitación se encuentre en la propia sección 3. En toda la ley no vemos nada restrictivo del derecho de la Legislatura a investir a la municipalidad de aquellos poderes para imponer contribuciones que la Legislatura considere convenientes. No hay prueba de una intención contraria a no ser que aparezca de la sección 3, y si la conclusión que ha de establecerse es que la sección 3 es restrictiva por razón del espíritu general de la Ley Jones, esa sección no puede usarse como premisa para probar la conclusión. Las palabras de esa sección deben leerse y entenderse por las reglas ordinarias de interpretación.

La apelante procura probar demasiado. Entendemos la sección 3 de la Ley Orgánica en el sentido de que confiere a la Legislatura el poder general de imponer contribuciones y de obtener dinero prestado confiriéndole además a dicha Legislatura el derecho a regular la cuestión de contribuciones municipales. En ella no encontramos restricción alguna en la clase de contribución menos en lo que respecta a las contribuciones de exportación. Si se lee la sección 3 como una restricción o limitación parecería imponer no una limitación al derecho de una municipalidad para fijar una contribución, sino a la facultad misma de la Legislatura. Fijándose demasiado, no hay nada en la sección 3 que diga expresamente que la Legislatura debe primero definir el poder de imponer contribuciones de una municipalidad. Expresa dicha sección que varias contribuciones que se enumeran pueden imponerse para "fines" de los gobiernos insular y municipal, según se provea y defina por la Legislatura de Puerto

Rico; pero como sólo la Legislatura puede imponer contribuciones insulares y puesto que ésta puede y sí impone contribuciones para fines municipales tendríamos entonces que creer que el Congreso en esta sección hablaba solamente del acto legislativo de la Legislatura Insular. Tendríamos que buscar en otra parte menos en la sección 3 a fin de encontrar alguna referencia acerca del poder para imponer contribuciones que reside en las municipalidades mismas, o que puede ser conferido a ellas. La sección 3 tendría entonces que leerse como si dijera que las contribuciones para fines municipales sólo podían imponerse por la Legislatura, conclusión que es claramente absurda, pues se admite por todos que dentro de ciertas restricciones la Legislatura puede facultar al municipio para imponer contribuciones. Considerando, pues, el espíritu general de la Ley proveyendo un Gobierno Civil para Puerto Rico y el precepto terminante de la sección 37, *supra,* el poder de la Legislatura sobre una municipalidad es tan completo como lo sería ordinariamente tal poder, y no vemos nada en la sección 3 que impida a la Legislatura poder conferir a la municipalidad, para fines locales, todas aquellas facultades para imponer contribuciones que ella misma no se reservó.

Que las legislaturas pueden y sí confieren poderes generales para imponer contribuciones a la propiedad dentro de su territorio a las municipalidades, las siguientes citas lo demostrarán: *Youngerman* v. *Murphy,* 107 Iowa 686; 76 N. W. 648.

En el caso de *State* v. *Irvin,* 35 S. E. 430, la carta municipal daba al municipio el mismo poder general para imponer contribuciones que el que tenía la asamblea general y la corte resolvió que la carta no era incompatible con la constitución que prohibía la imposición de cualesquiera contribuciones por los municipios excepto para fines necesarios y a menos que fuera por el voto de una mayoría, etc., y la corte resolvió que al que atacaba el poder de imponer la contri-

bución incumbía la obligación de acreditar que la contribución no era necesaria; y en el caso de *State* v. *Worth,* 21 S. E. 304, *supra,* se dijo lo siguiente: "Cuando se abusa del poder que ha sido delegado a una ciudad o pueblo en este sentido, la Legislatura puede restringir la facultad discrecional de ellos fijando un límite máximo o mínimo para cualquiera o todas las materias a que específicamente se ha impuesto contribución, pero no lo han hecho así y no vemos prueba de abuso de poder, si tuviéramos facultades para corregir o remediar tal mal." Véase también el artículo 360 del Código Político. El hecho de que la Legislatura anteriormente haya sido menos indulgente respecto a contribuciones municipales no puede afectar a la cuestión del poder.

2.—Sostiene la apelante que la corte cometió error al declarar que la contribución que trataba de imponerse era un arbitrio. Este fué el primer error alegado. La apelante insiste en que esta es una contribución a la propiedad. Ahora bien, si un municipio en Puerto Rico impone una contribución sobre la propiedad no habría al parecer ninguna objeción a ella, a menos que el campo haya sido cubierto anteriormente por la Legislatura. Sección 49 (*f*) de las leyes de 1920, *supra.* Todos los casos que cita la apelante y todo el razonamiento presume que si la contribución impuesta por el municipio es a la propiedad (*property tax*) es ilegal. La razón por la cual se insiste generalmente en esta distinción en los Estados Unidos es debido a las prescripciones constitucionales de que las contribuciones directas deben ser uniformes en todos los Estados Unidos. Las cortes, por tanto, han tratado de definir lo que es una contribución directa, una contribución a la propiedad, y otras semejantes, y las decisiones excluyen los arbitrios de la esfera de las contribuciones directas. No hay ninguna objeción a que se imponga una contribución uniforme a la propiedad por las debidas autoridades. La cuestión de uniformidad y de la alegada incompatibilidad con la legislación insular respecto

a contribuciones, se discuten en otra parte del alegato de la apelante.

Sin embargo, no tenemos duda alguna de que la contribución en cuestión es un *arbitrio*. El abogado de la apelante insiste en que la imposición de un arbitrio es siempre un ejercicio del poder de reglamentación (*police power*). Dudamos por ahora de esto y llamamos la atención del abogado a las siguientes autoridades: *Rosenbloom* v. *State*, 89 N. W. 1060; 26 R. C. L. 17; *Cooley on Taxation*, vol. 2, p. 1095. Creemos que pueden imponerse arbitrios por virtud del poder general de imponer contribuciones. No es necesario que discutamos el punto con mayor extensión, porque como supuesto ejercicio del poder de reglamentación no se hizo objeción a la contribución.

Como punto de partida de una discusión acerca de la naturaleza de esta contribución, consideraremos el caso más análogo discutido por la apelante, o sea, el de *Thompson* v. *McLeod*, L. R. A. 1918, C. 893. Mississippi hizo una ley por la cual se exigía a todas las personas ocupadas en el negocio de extraer trementina de los árboles, pagar una contribución anual por el privilegio u ocupación. La corte resolvió que esta era una contribución a la propiedad y en violación del precepto estatutorio de que se impondrá contribución a la propiedad en proporción a su valor. Dos jueces disintieron por el fundamento, en efecto, de que la Legislatura debió haber querido expresar lo que dijo al definir la contribución como una por la ocupación o privilegio, y estos jueces sostuvieron que era aplicable únicamente a aquellas personas que convertían en un negocio u ocupación la extracción de trementina; en otras palabras, que la ley no era aplicable a aquellos que meramente extraían la trementina, así como uno cogería manzanas de los árboles. La corte, sin embargo, entre otras razones sostuvo la objeción a la contribución, por el fundamento de que como regla en el Estado de Mississippi el efecto de la ley sería el de una contribución al producto

crudo no diferenciándolo de otros productos sin elaborar y que la ley constituía una imposición de una contribución sobre la propiedad.   La corte dijo que no existía ningún negocio bien definido en Mississippi de comprar y vender trementina cruda.   La parte esencial de la decisión era que no había ningún negocio envuelto.   El ser dueño y funcionar una factoría de azúcar es ocuparse de un negocio y la contribución sobre el azúcar no se impone al producto crudo.

El caso de *Patton* v. *Brady*, 184 U. S. 608, citado por los abogados de ambas partes sobre este punto, es uno de los principales respecto a la naturaleza de los arbitrios.   El arbitrio en cuestión era el tabaco manufacturado.   La corte se expresó en estos términos:

"Desde el primer período de la guerra civil ha habido un cuerpo de legislación, contenido en los estatutos bajo el título de Rentas Internas, por virtud del cual, sobre los artículos de consumo, se han fijado arbitrios en diferentes formas en ciertos períodos entre el principio de la manufactura o producción y el acto del consumo.   Entre los artículos sujetos de tal modo a esos arbitrios se encuentran los licores y el tabaco, debidamente seleccionados a ese fin por la razón de que no forman parte del alimento esencial que se suministra a la nación, sino entre aquéllos de lujo y placer.   La primera de estas leyes, aprobada en julio 1, 1862, 12 Estatutos 432, en sus términos disponía 'el cobro de derechos internos, derechos en sellos, patentes o contribuciones impuestas por esta ley,' e incluía el tabaco elaborado de todas clases.   Los estatutos subsiguientes cambiaron el importe del impuesto, rebajándolo la Ley de 1890 a seis centavos por libra.   Entonces vino la ley en cuestión, la que, con el fin de recaudar fondos para los gastos de la guerra de España, aumentó el impuesto a doce centavos por libra, especificando distintamente que había de ser 'en lugar de la contribución que ahora se impone por la ley.'   Nada puede haber más claro que en estos varios estatutos, incluyéndose este último entre ellos, el Congreso trataba de mantener en vigor un cuerpo de impuestos o arbitrios sobre el tabaco, licores espirituosos, etc.   Puede ser que todas las contribuciones enumeradas en estos varios estatutos no fueran arbitrios, pero la mayor parte de ellas, incluyéndose la contribución sobre el tabaco, eran claramente arbitrios dentro de cualquier definición aceptada de dicha palabra.

"Refiriéndonos a Blackstone, vol. 1, p. 318, encontramos que el arbitrio se define de este modo: 'Un impuesto interno que a veces se paga por el consumo del artículo, o frecuentemente a la venta al detall, que es el último período anterior al consumo.' Esta definición ha sido aceptada por Story en su Constitución de los Estados Unidos, sección 953. El Sr. Cooley en su obra sobre Contribuciones, página 3, lo define como 'Un impuesto interno fijado a los artículos de manufactura o venta y también por licencias para llevar a cabo ciertos negocios o negociar con ciertos artículos.' Bouvier y Black, respectivamente, en sus diccionarios dan la misma definición. Si examinamos los diccionarios generales, el Internacional de Webster lo define como 'un impuesto interno o derecho cuyo efecto es el de fijar una contribución indirecta al consumidor, la cual se fija sobre ciertos artículos que se enumeran, así como el tabaco, cerveza (ale), licores espirituosos, etc., producidos o manufacturados en el país. También se fija a las licencias para tener ciertos negocios y traficar con ciertos artículos.' La definición del diccionario Century es en sustancia la misma, aunque además se hace la siguiente cita de la obra de Andrews sobre Ley de Rentas, sección 133, a saber: 'Arbitrio es una palabra que se usa generalmente a diferencia de impuestos en su sentido restringido, y se aplica a los impuestos internos o dentro del país, que a veces se fijan al consumo de un artículo, a veces a la venta al detall de dicho artículo y otras a su manufactura.'

"Algunas de estas definiciones se citaron con aprobación por esta corte en los casos de ingresos internos, y aunque la fraseología no es la misma en todos, sin embargo, en tanto consideramos esta contribución en particular, cada uno de ellos lo comprendería. La contribución sobre el tabaco manufacturado es una sobre un artículo fabricado para el consumo e impuesto en un período que dista del principio de la manufactura al consumo final del artículo.

"Se admite prácticamente por uno de los abogados del demandante en error que esto es un arbitrio. Después de discutir la cuestión con cierta extensión dice lo siguiente:

" 'Para determinar, por tanto, lo que significa un arbitrio tenemos como guía, primero, la enumeración de los artículos a los cuales se imponía en Gran Bretaña en el año 1787. En segundo lugar, la naturaleza de la contribución como ha sido establecida judicialmente; y en tercer lugar, su definición, o el entendimiento común de la gente acerca de ella, como aparece en la Enciclopedia Británica y el diccionario de Century. Considerando estas tres fuentes de información

y combinándolas, parece que la idea principal es que un arbitrio es una contribución, impuesta sin regla o principio, a los artículos de consumo, por el procedimiento de su manufactura y a las licencias para venderlos  *  *  * .  Toda vez que se supondría que el tabaco era uno de esos artículos a los cuales se aplicaba la contribución en Inglaterra cuando la Constitución fué modelada, asumiré que la corte resolverá que la contribución en este caso es un arbitrio.'

"Es cierto que otros abogados en sus alegatos han adelantado un argumento muy completo e ingenioso para demostrar que esta es una contribución directa sobre la propiedad y que debe fijarse de acuerdo con la población dentro de la regla sentada en los casos de ingresos internos, pero como hemos visto, no es una contribución sobre la propiedad como tal, sino a ciertas clases de propiedades y que se refiere al origen de éstas y su supuesto uso.  Puede ser, como dijo el Dr. Johnson, 'una contribución odiosa impuesta a los artículos;' de cuya opinión evidentemente participa *Blackstone,* quien dice, al mencionar un número de artículos que habían sido agregados a la lista de aquellos a los cuales se fijó el impuesto, 'una lista que ningún amigo de su país desearía ver que siguiera aumentando.'  Pero estas son simplemente consideraciones de política que han de ser resueltas por la rama legislativa, y no de poder, para resolverlas el departamento judicial.  Llegamos a la conclusión, por tanto, de que la contribución que se fija por esta ley es un arbitrio propiamente dicho y pasamos a considerar las demás cuestiones que han sido presentadas por los abogados.

"Se ha insistido en que: 'El Congreso puede imponer un arbitrio sobre un artículo según lo estime conveniente de modo que tal arbitrio no equivalga a un despojo o confiscación.  Pero que habiéndolo fijado, lo impone, y el poder termina.  No puede fijar un impuesto por segunda vez.'  ¿Pero por qué ha de terminar el poder de imponer un arbitrio una vez que ha sido ejercitado?  Debe recordarse que las contribuciones no son deudas en el sentido de que una vez establecidas y pagadas toda responsabilidad ulterior del individuo para con el gobierno ha cesado.  Son, como se dice en *Cooley* sobre Contribuciones, página 1: 'La contribución proporcional de las personas y la propiedad, puesta en vigor y fijada por la autoridad del Estado para el sostenimiento del gobierno y de todas las necesidades públicas,' y mientras existan necesidades públicas así también existirá la responsabilidad del individuo para contribuir a ellas. · La obligación del individuo para con el Estado es continua y en proporción

a las necesidades públicas. La sabiduría humana no puede siempre prever cuáles habrán de ser las necesidades del futuro o determinar por adelantado lo que el gobierno necesariamente ha de tener para 'poder atender a la defensa común,' y 'promover el bienestar general.' Pueden surgir emergencias, suscitarse guerras inesperadamente; grandes exigencias pueden crearse al público sin que se le notifique suficientemente por adelantado; y puede ser que habiéndose dispuesto lo necesario para épocas de paz y de quietud, el gobierno carezca de poder para hacer un nuevo llamamiento a sus ciudadanos a fin de recaudar los fondos necesarios para las exigencias imprevistas.

"Lo que se creía posible en realidad existía. Una guerra había sido declarada. Los gastos nacionales naturalmente aumentarían y aumentaron por razón de dicha guerra. La recaudación de fondos por medio de empréstitos o contribuciones para tales gastos aumentados era necesaria. En esta legislación, si tal cuestión puede surgir, no hay nada de suposición o simulación. Existía una demanda y para afrontarla este estatuto fué decretado. La cuestión, por consiguiente, es si la disposición del Congreso debe comprender todo un año y al empezar resolver finalmente el alcance del gravamen de las contribuciones que pueden imponerse al ciudadano durante ese año con el resultado de que si surgen cuestiones durante el año que requieran gastos extraordinarios e inesperados el sostenimiento de los mismos debe prescribirse por medio de empréstitos, provisional o permanente; o si el Congreso tiene el poder inherente para aumentar la contribución durante el año si las exigencias requieren gastos mayores. Sobre esta cuestión no tenemos duda alguna. La contribución puede ir *pari passu* con el gasto. Las autoridades constituídas pueden propiamente hacer que una sea igual a la otra. El hecho de que se ha tomado acción respecto a las condiciones de paz no impide que se tome acción posterior con relación a las exigencias inesperadas por la guerra. Las cortes en este sentido no pueden revisar la actuación del Congreso. Ese cuerpo determina la cuestión de guerra y debe, por tanto, prescribir propiamente los medios necesarios para llevar a cabo dicha guerra. El empréstito o la contribución es posible. Puede adoptar uno u otra o repartirse entre los dos. Si se decide en todo o en parte por la contribución, eso significa un aumento en el tipo existente o quizá en las materias objeto de contribuciones, y el criterio del Congreso en cuanto a esto no está sujeto a impugnación judicial. Sabiamente se dijo por el Sr. Juez Cooley en su obra sobre Contribuciones, página 34, lo siguiente:

" 'El poder legislativo dispone, el ejecutivo ejecuta y el judicial interpreta las leyes.' Juez Presidente Marshall, en el caso de *Wayman* v. *Southard, 10 Wheat.* 1, 46. La Legislatura debe, por tanto, resolver todas las cuestiones necesarias de Estado, discreción o política envueltas al ordenar una contribución y fijarla; debe decretar todas las reglas que sean necesarias y los reglamentos que han de observarse a fin de obtenerse el resultado que se desea y deberá resolver sobre los medios e instrumentos por virtud de los cuales se hará la recaudación. 'Los tribunales judiciales del Estado nada tienen que hacer con la política de la legislación. Esa es cuestión que descansa enteramente en la discreción de otra rama coordinada del gobierno. El poder judicial no puede legítimamente dudar de la política o negarse a sancionar las disposiciones de cualquier ley que no sea compatible con ley fundamental del Estado.' Juez Presidente Redfield, *In re* Powers, 25 Vt. 261, 265 * * * Pero mientras la legislación no sea mera materia de suposición, sino que se limite a poner en vigor lo que es en su naturaleza estrictamente una ley de contribuciones, y mientras ninguno de los derechos constitucionales del ciudadano hayan sido infringidos en las disposiciones prescritas para poner en vigor la contribución, la legislación es de autoridad suprema. Las contribuciones pueden ser y a menudo son opresivas para las personas y corporaciones a quienes se imponen; pueden parecer injustas a la conciencia judicial y hasta innecesarias, pero esto no puede constituir ninguna razón para que el poder judicial tome intervención.' "

En el tomo 26 de *Ruling Case Law*, página 236, encontramos lo siguiente:

"Definición de arbitrio.—Un arbitrio es una contribución impuesta a la ejecución de un acto, al ejercicio de una ocupación o al goce de un privilegio. Toda forma de contribución no impuesta directamente por cabeza o a la propiedad debe constituir un arbitrio si es una contribución válida de alguna especie. Una contribución cuyo fin es que se fije como arbitrio puede estar sujeta a una u otra de las dos objeciones constitucionales siguientes: (1) que es una contribución a la propiedad y no un arbitrio, y de estar en conflicto con las limitaciones constitucionales que se fundan en las contribuciones sobre la propiedad es nula; (2) que no está dentro del poder constitucional de contribuciones en ninguna forma. En cuanto a la primera objeción parece que está bien establecido que el mero de-

recho de ser dueño y poseer propiedad no puede quedar sujeto a la imposición de un arbitrio y que puesto que el derecho a derivar una renta de la propiedad es el primer atributo del derecho de propiedad, el acto o privilegio de recibir una renta de dicha propiedad no puede ser materia de arbitrio. También se ha resuelto que el ejercicio del derecho a dedicar la propiedad al único uso para el cual sirve es en efecto una contribución sobre tal propiedad y no puede ser materia de un arbitrio y por esta razón una contribución no puede imponerse al acto de recolectar frutos de los árboles de uno mismo o de las cosechas de su propio terreno. Por otra parte, el uso de propiedad de ciertas clases, especialmente de lujo, siempre se ha considerado como materia adecuada para arbitrio. Así, pues, una contribución sobre el uso de carruajes se impuso en algunas de las colonias aún antes de la revolución, y una contribución semejante impuesta por los Estados Unidos en el año 1794 se sostuvo después de mucha discusión que era un arbitrio válido. De igual modo las contribuciones sobre el uso de mesas de billares aún por el mismo dueño para su recreo particular no han sido infrecuentes y en todas partes se ha declarado que son válidas. Las contribuciones por licencias sobre automóviles, de las cuales casi todos los Estados derivan una renta importante, es un ejemplo moderno de la misma especie de contribuciones. Lo mismo se ha resuelto con respecto a que una contribución sobre el uso de yates construídos en el extranjero es un arbitrio válido. No es la propiedad lo que es materia de contribución, sino la decisión del dueño durante el período de la contribución de aprovecharse de uno de los elementos envueltos en la propiedad o sea el derecho al uso.''

Y en las notas finales se citan entre otros casos los siguientes: *Pollock* v. *Farmers Loan & Trust Co.,* 157 U. S. 429; *Billings* v. *United States,* 232 U. S. 261. El primero que es el caso de Contribución sobre Ingresos, discute la naturaleza de una contribución directa y resuelve, hasta cierto punto por exclusión lo que es un arbitrio; que una contribución sobre el uso, por ejemplo, de un carruaje era un arbitrio. *Fulton* v. *United States,* 3 Dallas 171. Lo mismo en cuanto al negocio de una Compañía de Seguros, y que las contribuciones de herencia eran arbitrios, etc. Una contribución por ingresos era directa. En el segundo caso la corte

sostuvo que una contribución a un barco construído en el extranjero se imponía claramente al uso, a diferencia de la propiedad, y por tanto era un arbitrio.   En algunos casos el razonamiento es muy sutil, pero no encontramos ninguno en que se resuelva que una contribución sobre la manufactura, o venta, es la llamada contribución a la propiedad (*property tax*).   Por el contrario, las contribuciones a la ocupación, manufactura y privilegio son arbitrios.   Se sostuvo que era un arbitrio la contribución impuesta al negocio dentro del Estado de una corporación extranjera.   *Pick* v. *Jordán,* 169 Cal. 1, posteriormente confirmado por la Corte Suprema de los Estados Unidos.   Indirectamente, como se demuestra en este caso y en otros, un arbitrio con frecuencia o finalmente se impone a la propiedad, pero las contribuciones sobre los negocios, ocupaciones o manufacturas no son contribuciones a la propiedad como han sido definidas por los economistas o las cortes.

Un caso que guarda íntima relación con este es el de *Sugar Refining Company* v. *McClain,* 192 U. S. 397, en el que se resolvió que la contribución impuesta a los ingresos brutos anuales en exceso a la suma de $250,000 de cualquier corporación o compañía que explotaba o hacía negocios de refinar azúcar, era un arbitrio y no una contribución directa.   El Juez Sr. Harlan revisó los casos en la página 412, incluyendo el de *Patton* v. *Brady, supra,* para demostrar esto.   También es de interés el caso de *Stratton's Independence* v. *Howbert,* 231 U. S. 399, 415, en el cual la corte dijo que el mineral sacado de una mina experimentaba un proceso semejante a la manufactura, una conversión de propiedad inmueble en mueble.   Véanse también los casos citados en la página 414 de esa opinión.

3.—La apelante alega que la corte inferior cometió error al no declarar probado, suponiendo que una contribución sea un arbitrio, que la apelante ya había pagado derecho por licencia a la Tesorería Insular.   Más bien creíamos que eran

las municipalidades las que ahora imponen contribuciones por licencias aunque sabemos que a veces ha sido la Legislatura Insular; pero suponiendo que la apelante quiere referirse a la ley general por la cual las municipalidades están autorizadas para imponer derechos por licencia y que ésta era la ley de la legislatura, surge la cuestión de si la contribución en particular que se trataba de imponer está cubierta por la contribución de patente ya satisfecha por la apelante. A primera vista pudiera aparecer que hay algún fundamento en este señalamiento si no fuera por el hecho de que los economistas y las cortes hacen una distinción entre una contribución general sobre el negocio y la fijada a la manufactura de un artículo. Se indica claramente por varias autoridades que una contribución general a la explotación de un negocio y una sobre las manufacturas son dos formas distintas de arbitrios. Por lo tanto, si en la ley general no hay nada que impida la imposición de una contribución adicional por la legislatura, por ejemplo, a las manufacturas en general en Puerto Rico, también puede imponerla el municipio por virtud de su plan general de facultades. *Patton* v. *Brady, supra; McHenry* v. *Alford,* 168 U. S. 651, 669; *American Manufacturing Company* v. *St. Louis,* 250 U. S. 459. Que no existe objeción alguna a la contribución por ser doble se resolvió en el caso de *Nebraska Telephone Company* v. *City of Lincoln,* 28 L. R. A., N. S. 221; *El Pueblo* v. *Garzot,* 24 D. P. R. 231. Hacemos la siguiente cita del tomo 2 de *Cooley* sobre Contribuciones, páginas 1095–6:

"Los métodos por los cuales habrá de imponerse la contribución al negocio son también de discreción legislativa. Las contribuciones más corrientes son:—1. Sobre el privilegio de seguir el negocio.—2. Sobre la cuantía del negocio realizado. 3. Sobre la totalidad de las ganancias en el negocio.—4. Sobre la ganancia neta o ganancias distribuídas. Pero la contribución puede medirse por otros tipos prescritos con tal fin así como por estos.

"Se ha visto que no es una objeción concluyente contra tal contribución el hecho de que con ella se duplica la carga a la persona

que paga dicha contribución.  Imponer una contribución a un comerciante sobre su mercancía como propiedad y también sobre la totalidad de sus ventas, puede ser oneroso, pero no es anticonstitucional cuando el pueblo no ha creído conveniente prohibirlo expresamente.  Las dos contribuciones no son idénticas aunque puedan funcionar indebidamente en casos particulares al imponer ambas contribuciones, tal cosa no es una consecuencia necesaria y siempre ha de presumirse que todos los gravámenes de la contribución han sido distribuídos por la Legislatura con el debido miramiento a la igualdad en los resultados finales del cobro.  Una contribución por tanto que a primera vista parece odiosa y parcial puede, sin embargo, demostrar en sus resultados que es justa e igual como cualquiera otra.''

4.—La apelante levanta la cuestión de uniformidad y dice que la Ley Orgánica exige que la uniformidad debe ser la regla en Puerto Rico.  Ha quedado establecido terminantemente el punto de que la uniformidad es una cuestión geográfica, y que una contribución nacional debe ser uniforme en toda la nación, una contribución de Estado, uniforme en todo el Estado, y una contribución municipal o de un condado, también debe ser uniforme en toda la municipalidad o el condado.  *Knowlton* v. *Moore,* 178 U. S. 41, 83 *et seq.* y citas; 26 R. C. L. 247; 37 Cyc. 733, *et seq.*  El punto de que diferentes municipalidades podrían imponer contribuciones distintas ha sido considerado y resuelto por dichas autoridades.

5.—En el tercer señalamiento de error la apelante sostiene que la ordenanza es nula, toda vez que su título no especifica claramente el objeto de la ley.  El título era este: ''Ordenanza para imponer una contribución especial sobre cada quintal de azúcar manufacturada en la municipalidad de Arroyo, Puerto Rico, y para otros fines.''  Esto parece ser bastante claro y basamos nuestra decisión en ese punto.

Insiste la apelante en que bajo la sección 23 de la Ley Municipal, se exige a los municipios que sigan las mismas reglas prescritas en la sección 34, párrafo 8, de la Ley Orgánica en relación con la Asamblea Legislativa.  La sección

23 dispone que todas las limitaciones impuestas por la Ley Orgánica de Puerto Rico a la Legislatura y sus miembros serán aplicables, en tanto sea posible, al concejo municipal y a sus miembros. Esta sección está en la Ley Municipal entre otras varias relativas a la elección de miembros del concejo municipal, sus sueldos, etc. No creemos que la Legislatura al aprobar esta ley tuvo presente en absoluto la cuestión de una forma o modo de aprobar ordenanzas municipales, pero si tuviéramos dudas acerca de esto diríamos que las palabras ''en tanto sea posible'' excluirían la idea de que una municipalidad, al aprobar estas ordenanzas debe observar todas las formalidades de una Legislatura.

6.—Semejantes consideraciones son de aplicación al alegado señalamiento final en el que se expresa que el municipio no observó las reglas requeridas en la aprobación de una ordenanza. Convenimos con la apelada en que como el municipio aprobó por unanimidad esta ordenanza que tal unanimidad subsanaría cualquier defecto relativo a la alegada falta en referir primero la resolución a un comité. Aunque las leyes municipales indican que hay tales comités en los concejos municipales, mientras no estemos de otro modo más convencidos, no vemos que deba exigirse a un municipio que envíe cada ordenanza a un comité. Con mucha frecuencia y a diferencia de una Legislatura, se exige a un municipio que actúe inmediatamente. Sería contra el espíritu de nuestras leyes en general exigir grandes formalidades en la tramitación de una ordenanza.

7.—El error restante es que la ordenanza es irrazonable. Este es el número 6 de los señalamientos de error de la apelante. Algunas de estas cuestiones de irrazonabilidad afectan a la sabiduría de la ordenanza, lo cual como ya hemos indicado, es cuestión que incumbe a la Legislatura y no a las cortes. Casi todo lo demás en que pudiera pensarse para demostrar que esta ordenanza es irrazonable impondría a la apelante una obligación que no ha cumplido. Esta sería el

demostrar que la contribución en cuestión era confiscatoria, o tan inconveniente que se vería su irrazonabilidad. No creemos que la apelante cumplió con esta obligación. Ni demostró tampoco que el importe de la contribución excedía al límite verdadero del tipo económico fijado por la Ley Orgánica, sección 37, si las palabras de esa sección se refieren a un arbitrio. Tampoco sería bastante con afirmar, como se ha sugerido, que esta contribución se impone sólo a la apelante, si ésta en un país azucarero es la única factoría en la municipalidad que muele cañas.

8.—Algunas de las consideraciones generales que hace la apelante tienen aplicación al hecho de no haberse demostrado que los fines por los cuales la contribución se impuso no eran necesarios, pero una contribución para establecer más escuelas o mejorar éstas, es una de las contribuciones municipales más favorecidas. Un caso interesante sobre el particular es el de *Larue* v. *Redmon,* 182 S. W. 622.

La sentencia apelada debe ser confirmada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Presidente del Toro y Asociados Aldrey y Hutchison.

El Juez Asociado Sr. Franco Soto no intervino en la vista de este caso.