32583. CITY OF GRIFFIN v. FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF GRIFFIN.

DECIDED OCTOBER 21, 1949.

218

*Beck, Goodrich & Beck,* for plaintiff in error.

*E. S. Sell Jr.,* as amicus curiae.

*Cumming, Cumming & Cumming,* contra.

*Charles D. Hurt, Rex T. Reeves,* as amici curiae.

WORRILL, J.  Code (Ann. Supp.) Ch. 16-4 was codified from the Building and Loan Act which was approved December 24, 1937.  This act defined building and loan and savings and loan

associations and provided for their governance and regulation. It seems to be conceded that the plaintiff comes within the definition of savings and loan associations as set forth in this chapter. The section under consideration, § 16-427, reads as follows: "No State chartered association, as defined by this chapter, shall be assessed or subjected to taxation by the State, any county, municipality or other political subdivision taxing authority on its franchise, capital, reserves, surplus, loans, shares, or accounts; except that any real property and any tangible personal property not hereinbefore specifically mentioned, which may be owned by it, shall be subject to taxation to the same extent, according to its value, as all other real and tangible personal property is taxed. The foregoing section shall also apply to all Federal savings and loan associations with a home office located within this State." It is agreed also that the tax in question is neither a tax on capital, reserves, surplus, loans, shares or accounts, nor is it a tax on real or tangible personal property according to its value. Therefore the real and controlling question becomes whether or not the tax is a franchise tax within the meaning of the section and thus is prohibited.

What did the legislature mean by use of the word "franchise?" "The word 'franchise' has been used to denote various meanings. The true meaning 'is the privilege of doing that "which does not belong to the country generally by common right."'" 23 Am. Jur. 714, § 2. The Code, § 92-2301, defines 'special franchise,' and it will be observed that the term 'special franchise' is the same as 'franchise,' when the latter is used in its true sense. The section ends with the following expression: 'But the term "special franchise" shall not include the mere right to be a corporation engaged in trading or manufacturing and exercising no specific franchise above enumerated,' it will be observed that the defendant and like corporations are not empowered to own a franchise, in the true sense of the word, which would be subject to taxation as property. Likewise, we know of no case in which a tax on capital stock has been called a 'franchise' tax, so we are driven to the inescapable conclusion that the legislature did not use the word in its true sense, or as meaning 'capital stock,' but used it in a loose and more general sense, as being synonymous with 'license,' which in turn is

synonymous with 'occupation tax.'" *Forrester* v. *Georgia Milk Producers Confederation*, 66 *Ga. App.* 696, 698 (19 S. E. 2d, 183).

We think that the Code section under consideration plainly provides that no chartered association, as defined by this chapter, is subject to such taxation as set forth therein, and it is clearly shown that the plaintiff association is such as referred to in said Code section, and it is exempt from the said taxation. The word "franchise" as used in the Code section is used in the loose or general sense as being synonymous with "license" and "occupation"; under the Code section the plaintiff association is exempt from any license or occupation tax or fee for doing business in the City of Griffin; and the said ordinance of the City of Griffin, insofar as it attempts or purports to impose a license fee upon the plaintiff association is invalid and prohibited by said Code § 16-427.

The trial court did not err in holding as a matter of law that Code § 16-427 exempted the plaintiff association from the payment of a license or business tax imposed upon it by the City of Griffin.

This case was considered by the whole court as provided by the act approved March 8, 1945 (Ga. L. 1945, p. 232).

*Judgment affirmed. Sutton, C. J., Gardner and Townsend, JJ., concur. MacIntyre, P. J., and Felton, J., dissent.*

FELTON, J., dissenting. The petition in this case alleged in part: "Said license is not a property tax on real or personal tangible property owned by the association, but is a license fee imposed for the privilege of doing business." The petition shows that the charter was issued by the Federal Home Loan Bank Board under the Home Owners' Loan Act of 1933. The act of 1937 (Ga. L. Ex. Sess. 1937-38, Code (Ann. Supp.) § 16-427) provides that such an association shall not be assessed or subject to taxation "on its *franchise, capital, reserves, surplus, loans, shares,* or *accounts.*" (Emphasis added). Each of the above italicized words is a noun and is personal property. *State ex rel. Waring* v. *Georgia Medical Society*, 38 *Ga.* 608 (95 Am. D. 408). "To be a franchise the right possessed must be such as cannot be exercised without the express permission of the sovereign power—a privilege or immunity of a public nature which can-

not be legally exercised without legislative grant." 23 Am. Jur. 715, § 2. "It is the privilege of doing that 'which does not belong to the citizens of the country generally by common right' that constitutes the distinguishing feature of a franchise." Ibid.

I cannot see how it can be concluded that the word "franchise" as used in the act in question, and used as a noun, could be construed as being used in a loose or general sense and as meaning license or occupation. If the word "license" or "occupation" was substituted in the act for the word "franchise" the entire meaning of the provision would be changed. The prohibition is against a property tax and if the above words are substituted the meaning is enlarged to include privileges, which are not taxable rights. The *Forrester* case, cited by the majority, is not controlling. There the word "franchise" was an *adjective,* and was followed by another adjective which determined its meaning. The word franchise as here used means the primary authority to do business granted by congressional authority and not some secondary and subordinate privilege which could be granted by the City of Griffin. If an individual was so taxed by the City of Griffin for operating a grocery business which he had the right as a citizen to do it would not be a tax on his "franchise" in the true sense of the word. He had no franchise and would be required to have none. The act here refers to associations which cannot operate without "franchises" in the true and strict sense of the word. When it is used in such connection it has a meaning quite different from what it would have if it was used in connection with individuals who were either not permitted to or did not acquire an actual corporate charter franchise. It was held in *Macon Ry. & Light Co.* v. *Macon,* 136 *Ga.* 797 (72 S. E. 159) that an agreement that the company's payment of a percentage of the gross receipts of the company would be in lieu of all "license, occupation, or special tax or taxes" did not prevent the collection of a tax on the franchise of the company. Doubt as to the meaning of a tax-exemption statute should be resolved against the exemption. I do not seek to determine whether the legislature should declare such an exemption. I simply say that it has not done so.

MacIntyre, P. J., dissenting. In addition to the reasons stated in the dissenting opinion of Judge Felton, I am of the

222

opinion that the judgment should be reversed for the following reasons. The word "franchise" has been so variously defined and its use by the various legislatures has been so loose and inaccurate that it would seem that the word now defies accurate, concrete definition, but this variety of definition should not serve as a handicap in construing and interpreting individual enactments. The word is simply to be given the obvious connotation intended by the legislative body in each individual enactment. Franchise is, however, generally (and this will bear upon its meaning in the individual enactment since words are to be given their general and ordinary meaning in construing enactments) defined as "a political or constitutional right reserved to or vested in the people, as the right of suffrage," the elective franchise. It has also been defined as "a special privilege emanating from the government by a legislative or royal grant, and vested in an individual person or in a body politic or corporate." A franchise is only, as a rule, grantable by the sovereign power. There are instances, of course, where the sovereign power may delegate this power of grant to subordinate branches. In its accurate sense franchise is not to be loosely used and confused with license. As distinguished by the North Carolina Supreme Court, "Franchise is property, intangible, it is true, but nonetheless property — a vested right, protected by the Constitution—while a license is a mere personal privilege, and, except in rare instances and under peculiar conditions, revocable." Elizabeth City v. Banks, 150 N. C. 407, 415 (64 S. E. 189). We think that it might also be said that the franchise is the right while the license is the exercise of that right. Thus one may have a corporate franchise to do business in this State, but when he exercises that right the State has a right to tax that exercise of the right, that is, place upon the exercise of that right a license tax. One has an inviolable right to own property in this State, but the State has a right to tax it. In the instant case for the right to do business in this State as a building and loan association under Code (Ann. Supp.) § 16-416, the association must pay to the Secretary of State at the time of filing its annual report to the Secretary a certain fee, based upon the valuation of its assets. This is in the nature of a tax upon the franchise, but it is not in the nature of a license

or a tax on the exercise of the right to do business. Code § 92-2304, is in the nature of a tax on franchises.