WAPA T.V. Broadcasting Corporation, apelante, *v.* Secretario de Hacienda, apelado.

*Número:* O-76-421     *Resuelto:* 9 de marzo de 1977

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

La apelante WAPA T.V. Broadcasting Corporation opera una estación de televisión en San Juan con licencia de la Comisión Federal de Comunicaciones (FCC). WAPA T.V. advino dueña de la estación y licencia cuando la F.C.C. aprobó la venta pactada el 4 de octubre de 1961 entre WAPA y Ponce de León Broadcasting, Inc., en virtud de la cual ésta traspasó a la apelante el control de la compañía, inclusive la licencia para trasmitir que fue elemento esencial del contrato.

En 1972 el apelado Secretario de Hacienda tasó la propiedad mueble de WAPA en $2,483,990.00 y le impuso una contribución de $57,876.97 para el año fiscal 1970–71. Incluyó en este total la cantidad específica de $20,354.93 impuesta como contribución a la licencia de televisión sobre un valor tasado de $873,600.00. Igual imposición hizo el Secretario respecto a la licencia para los ejercicios fiscales 1971–72 y 1973–74. Para el 1974–75 dicha contribución aumentó a $32,497.99. La contribuyente impugnó la legalidad de la contribución sobre su licencia para transmitir en cuatro demandas que fueron consolidadas, ventiladas y declaradas sin lugar en el Tribunal Superior. En su recurso de apelación que reviste con alternativa de revisión hace la apelante ocho seña-

lamientos de error que resume en dos planteamientos centrales: (1) que una licencia para transmitir concedida por la Comisión Federal de Comunicaciones (FCC) no es propiedad mueble sujeta a tributación; y (2) que la contribución es en efecto una imposición a una instrumentalidad del Gobierno Federal cuya propiedad está exenta de tributación.

## I

Respecto a propiedad mueble imponible ordena el Art. 290 del Código Político (13 L.P.R.A. sec. 443):

"Toda propiedad no exenta expresamente del pago de contribuciones será tasada como imponible. . . .

Los bienes muebles comprenderán . . . derechos de privilegio,[1] marcas de fábrica, franquicias, concesiones y todas las demás materias y cosas susceptibles de ser propiedad privada, no comprendidas en la significación de la frase 'bienes inmuebles'. . . ."

■ La licencia para transmitir que concede la F.C.C. no está comprendida en la enumeración de propiedades exentas de tributación listadas en el Art. 291 del Código Político (13 L.P.R.A. sec. 551). El Tribunal Superior determinó correctamente que dicha licencia es *propiedad privada* tributable.

La licencia de WAPA representa para ésta un bien valioso,[2] sin el cual se reducirían a un valor nominal las estructuras, equipos e instalaciones que en conjunto dan relieve económico a esta empresa en marcha. La apelante así lo reconoció desde un princípio cuando en el contrato de 1961 que viabilizó su adquisición de los activos de Ponce de León Broadcasting Company hizo constar que incluían las licencias y todos los derechos de ésta como concesionaria de una licen-

---

(1) Traducción de *patent-rights* que en *González Chemical* v. *Secretario de Hacienda,* 86 D.P.R. 72 (1962), se virtió como "derechos de patente".

(2) "Privilegio de gran valor" lo llama la apelante en su alegato, en sí representa en el libre comercio.

cia para operar una estación de televisión([3]) y supeditó el cumplimiento y ejecución del contrato a la aprobación del traspaso por la Comisión Federal de Comunicaciones. ([4]) La función reguladora de esta agencia que principalmente consiste en asignar frecuencias o canales de televisión y mantener aquellas normas de transmisión que mejor sirvan el interés, la necesidad y la conveniencia pública, ([5]) no es incidencia aislada en la extensa modificación que en nuestros tiempos muestra el derecho de propiedad.

La posición de la apelante negando que su derecho de licencia tenga características de propiedad([6]) porque carece de libre disposición de la misma es un regreso al concepto unitario e indivisible del dominio, de señorío pleno, suplantado aun en el Derecho Civil moderno que no considera las limitaciones del dominio como anomalías raras e insólitas

---

([3]) El texto de dicha parte del acuerdo, a la pág. 40 reza:

"The Buyer shall purchase from the Company, and the Company shall sell to the Buyer, all of the Company's assets and business as a going concern including, without limitation, *all of the Company's good will, leases and contracts, licenses and all of its rights as a licensee* of television station WAPA-TV at San Juan, *Puerto Rico, for the sum of One Million Five Hundred Thousand Dollars ($1,500,000),* plus the value, . . . of the account identified 'Deferred Film Rental' exclusive of the value of the film series 'MAVERICK', 'PANIC', and 'PHILLIP MARLOW' . . . ." (Bastardillas nuestras.)

([4]) El contrato en su Art. II (b) (ii) dispone:

"(ii) It is specifically understood and agreed that the consummation of this Agreement in all respects shall be subject to the Federal Communications Commission's prior consent to the transfer of control of the Company."

([5]) "The statute mandates the issuance of licenses if the 'public convenience, interest or necessity will be served thereby'. 47 USC 307(a)." *Red Lion Broadcasting Co.* v. *F.C.C.,* 395 U.S. 367, 394 (1969).

([6]) Los casos de *F.C.C.* v. *Sanders Bros.,* 309 U.S. 470 (1940), *Ashbacker Radio Corp.* v. *F.C.C.,* 326 U.S. 327 (1945) y *Red Lion Broadcasting Co.* v. *F.C.C.,* 395 U.S. 367 (1969), niegan propiedad al concesionario de una licencia en los canales de transmisión y en las frecuencias asignadas, de modo que no podrán alegar "derechos adquiridos" a la F.C.C., siguiendo los Arts. 301 y 304 de la Ley Federal de Comunicaciones (Título 47 U.S.C.A.). Dichas decisiones no anulan el *interés propietario* que la licencia en sí representa en el libre comercio.

de un derecho por naturaleza absoluto, sino constitutivas precisamente del Derecho común de la propiedad. *E.L.A.* v. *Rosso*, 95 D.P.R. 501, 516, 524 y ss. (1967). "El concepto de dominio hace tiempo perdió la rigidez monolítica tejida alrededor de la facultad de enajenación que al dueño le señala el Art. 280 [del Código Civil]. A la desintegración del concepto unitario, impulsada por un sentido social y por el surgimiento de múltiples clases de propiedad con nuevos perfiles y rasgos peculiares, ha seguido una nueva definición del dominio, en la cual coinciden Roca, Castán y Puig Brutau como 'el derecho real que atribuye a su titular el poder o señorío más amplio posible sobre una cosa corporal, dentro de límites institucionales, con carácter plenamente autónomo, perpetuo (en principio), elástico, y, en parte, de contenido discriminable.' Castán, *ibid*, pág. 108." *Ortiz Roberts* v. *Ortiz Roberts*, 103 D.P.R. 628 (1975).

▮ Mas el poder del Estado y los derechos de la persona en el campo tributario no se rigen por el Código Civil ni por la Ley Hipotecaria, sino por el estatuto fiscal. *Albanese* v. *Srio. de Hacienda*, 76 D.P.R. 324 (1954). La jurisprudencia norteamericana sostiene que aun cuando las licencias para usar frecuencias designadas de radio y televisión están limitadas a términos de tres años, su renovación por iguales períodos sucesivos está descontada mientras el usuario cumpla las condiciones que en protección del interés público dicta la Comisión Federal de Comunicaciones, lo que crea en el concesionario la expectativa de continuada renovación y de disfrute de la licencia y de sus ventajas económicas por tiempo indefinido.([7]) *Richmond Television Corp.* v. *United States*,

---

([7])". . . in the absence of misconduct, what reason could arise to cause the Commission to deviate from its consistent practice and refuse renewal? . . . The taxpayer has furnished its own appraisal of the insubstantiality of any such conjecture. It has in fact proceeded in 1956 and 1957 and in the succeeding years . . . on the only reasonable assumption— that its *license, while technically granted for only three years at a time is in economic operation one of indefinite duration.*" (Bastardillas nuestras.) *Richmond Television Corp.*, supra.

354 F.2d 410, 412. La limitación a tres años y la intervención de la agencia reguladora, en el curso normal de los negocios y empresas no afectan el disfrute del poseedor de la licencia la cual ingresa en su activo, se acrecenta con las fuerzas económicas de incremento y plusvalía, genera beneficios y entra al comercio de los hombres porque el usuario podrá transferirla previa aprobación de la F.C.C., y llegado ese momento percibirá su valor comercial como precio ajustado en el convenio de compraventa. Las frecuencias y canales de trasmisión lucrativos no son infinitos por lo que tiene superior valor comercial una estación televisora en operación con licencia y plusvalía de canal conocido, frente a la alternativa de comenzar por solicitar una licencia nueva y construir la planta. En el eminentemente práctico campo de las contribuciones cuenta más el claro interés propietario identificado en el contenido patrimonial, el valor, la utilidad y el provecho que para el concesionario representa esta licencia que la académica integración de elementos clásicos en el hoy renovado concepto de propiedad. *Maristani v. Srio. de Hacienda*, 94 D.P.R. 291, 300 (1967). No puede sobreponerse la forma a la sustancia. El interés del poseedor en el bien [8] cuando tenga todos los atributos prácticos de dominio, se tendrá como interés propietario. *Cf. De la Haba v. Tribl. de Contribuciones*, 76 D.P.R. 923 (1954); *United States v. County of Fresno*, 97 S.Ct. 699 (1977), op. de 25 de enero, 1977—45 L.W. 4131. La licencia de transmisión de la apelante es en sí un bien mueble con los atributos típicos del derecho de propie-

---

[8] La propiedad tributable no responde al concepto tradicional de dominio individual e indivisible recogido en un dictum de *González Chemical v. Srio. de Hacienda*, 86 D.P.R. 72 (1962). El concepto de propiedad imponible ha evolucionado hacia la teoría de la divisibilidad, que reconoce la propiedad como un conjunto de derechos sobre una cosa, considerándose dueño a los fines contributivos quien posea uno de esos derechos. *Ibid.*, pág. 76. El propio autor Keesling citado en *González Chemical*, supra, sostiene que en materia de contribuciones sobre la propiedad, la doctrina de divisibilidad es la que impera. Keesling, *Conflicting Conceptions of Ownership in Taxation*, 44 Calif. L. Rev. 866, 868 (1956).

dad, pues tiene un valor económico, es exclusiva y transferible, y es por tanto una de las "materias y cosas susceptibles de ser propiedad privada" sujeta a tributación a tenor del Art. 290 del Código Político (13 L.P.R.A. sec. 443); y por ser la apelante una corporación dicha licencia deberá tasarse como propiedad mueble de la corporación, revestida como está de la naturaleza de derecho, franquicia(9) o concesión. Art. 317, Código Político (13 L.P.R.A. sec. 464). No se cuestiona la razonabilidad de la contribución por lo que este caso es uno en que el Gobierno del Estado Libre Asociado ha ejercido su poder tributario en proporción adecuada a las actividades de la apelante y al consiguiente disfrute por la apelante dentro de las oportunidades y protección que el Estado le ha brindado. *General Motors* v. *State of Washington*, 377 U.S. 436 (1964).

## II

La contención de la apelante al efecto de que la imposición de contribución sobre propiedad a su licencia para transmitir menoscaba y obstruye la política pública del Gobierno Federal y de su Comisión Federal de Comunicaciones y que por tanto invade los predios de la supremacía del Congreso, es insostenible. El Congreso no creyó necesario extender exención contributiva a tales licencias; el poder del

---

(9) "Franquicia" y "licencia" son términos aledaños en retórica y contenido, reiteradamente usados como sinónimos. *City of Griffin* v. *First Federal Sav. & Loan Assn. of Griffin*, 55 S.E.2d 771, 773 (1949); *American States Water Service Co. of California* v. *Johnson*, 88 P.2d 770, 773 (1939); *Nebraska Telephone Co.* v. *Lincoln*, 121 N.W. 442 (1909). La franquicia es también propiedad. *Long Island Water Supply Co.* v. *Brooklyn*, 166 U.S. 685, 41 L.Ed. 1165; *West River Bridge Co.* v. *Dix*, 6 How 507, 12 L.Ed. 535. Una licencia concedida para operar un negocio investido de un interés público tal que justifique su reglamentación por el estado, es una franquicia. *New State Ice Co.* v. *Liebman*, 285 U.S. 262, 273 (1932). Las franquicias constituyen propiedad y por lo tanto están sujetas a tributación. 1A Thompson, *Real Property*, sec. 295, pág. 508, ed. 1964; 14 Fletcher, *Cyclopedia of Corporations*, sec. 6950, pág. 555; Joyce, *Franchises*, sec. 26, pág. 80.

Estado Libre Asociado de Puerto Rico para allegar recursos mediante la imposición de contribuciones es incuestionable, aun prescindiendo de la autorización contenida en la Sec. 3 de la Ley de Relaciones Federales en cuanto a que "podrán imponerse contribuciones e impuestos sobre la propiedad, ingresos, rentas internas, y por licencias, franquicias, privilegios y concesiones, cuando dichas contribuciones sean para los fines de los gobiernos insular y municipal, respectivamente, y se impongan según las disposiciones y prescripciones de la Asamblea Legislativa de Puerto Rico" (*R.C.A.* v. *Gobierno de la Capital*, 91 D.P.R. 416 (1964) ) ; y finalmente la F.C.C., y no la licencia en sí, es la instrumentalidad concernida que no recibe impacto contributivo alguno en este caso. Lo dicho sería suficiente para sacar los hechos de la regla de *McCulloch* v. *Maryland*, 17 U.S. (4 Wheat) 314, 427 y ss. (1819), considerando especialmente, que el Tribunal Supremo de los Estados Unidos acaba de validar una contribución impuesta por el estado de California sobre el uso o interés posesorio (*possessory interest*) de los guardabosques en la casa propiedad del Gobierno que el Servicio Forestal federal les provee como parte de su salario, reiterando la regla de que "un estado puede recaudar rentas gravando propiedad de los Estados Unidos por el tiempo que dicha propiedad sea usada por una persona particular o una corporación, y siempre que la contribución se limite a la posesión o uso por el ciudadano privado." *United States* v. *County of Fresno*, supra.

El recurso de apelación no plantea cuestión constitucional substancial, y como revisión no ha conmovido la bien fundada decisión del Tribunal Superior. *Confirmada.*

El Juez Asociado Señor Rigau no intervino.