# 96 DTA 116

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
### PANEL I

RIO CONSTRUCTION CORP.
Demandante-Apelante

v.

MUNICIPIO DE CAGUAS
Demandado-Apelado

Núm. KLAN-96-00435

San Juan, Puerto Rico, a 17 de septiembre de 1996

Panel integrado por su presidente, Juez señor Amadeo Murga
y los Jueces señora Pesante Martínez y señor Rivera Pérez

Pesante Martínez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Mediante recurso de apelación comparece ante nos el demandante-apelante, Río Construction Corp. solicitando la revocación de una sentencia sumaria emitida el 8 de febrero de 1996, por el Tribunal de Primera Instancia, Sala Superior de Caguas. En la misma se declaró válida la facultad del Municipio de Caguas y su Asamblea Municipal de cobrar intereses por contribuciones no pagadas por

concepto de arbitrios de construcción de manera retroactiva, a tenor con lo dispuesto en la Ordenanza Municipal Número 37 del 21 de diciembre de 1993.

## I

El 28 de octubre de 1992, la Autoridad de Carreteras y Transportación de Puerto Rico, en adelante, *"ACT"* celebró una subasta para realizar una obra de construcción denominada *"Ensanche de la Carretera P.R. - 189, Municipio de Caguas, Puerto Rico AC-018917"*. Ese mismo día se llevó a cabo el acto de apertura de los sobres que contenían la propuesta de los licitadores y la lectura de éstas resultando ser el postor más bajo en la referida subasta el demandante-apelante Río Construction Corp., en adelante, *"Río Construction"*.

El 3 de diciembre de 1992, se adjudicó la subasta a ACT y el 18 de diciembre de 1992, se otorgó el contrato entre las partes.

Al momento de la subasta estaba en vigor la Ordenanza Núm. 37, Serie 1989-90, que imponía al contratista el deber de pagar un porciento (1%) de interés del valor licitado de la obra por concepto de arbitrios de construcción. Razón por lo cual, el 7 de octubre de 1993, el Municipo requirió a Río Construction el pago de $29,198.29.

El 21 de diciembre de 1993, mediante la Ordenanza Núm. 37, Serie 1993-94, el Municipio aumentó el tipo contributivo de un porciento (1%) al de dos y medio porciento (2.5%) y ordenó que el efecto del mismo fuera de forma retroactiva al 5 de octubre de 1977.

Río Construction no pagó los arbitrios requeridos bajo ninguna de las dos ordenanzas y presentó demanda en solicitud de sentencia declaratoria alegando que al momento de adjudicarse la subasta los municipios no tenían un poder expreso de la Legislatura para imponer doble tributación y que los municipios no pueden imponer contribuciones de manera retroactiva.

El Tribunal de Instancia determinó que al momento de otorgarse el contrato estaba en vigor la Ley Núm. 93 de 17 de noviembre de 1992, 21 L.P.R.A. sec.651 *et seq.*, que facultaba a los Municipios a imponer arbitrios de construcción independientemente de haber recibido un pago por concepto de patentes municipales sobre el mismo evento económico. También resolvió que la Ordenanza Municipal Núm. 37, Serie 1993-94, sólo tiene efecto retroactivo hasta la fecha de efectividad de la Ley Núm. 93, concediendo expresamente a los Municipios el poder de establecer un esquema de doble tributación.

Inconforme con la sentencia dictada apelan ante nos alegando se cometieron los siguientes errores:

*"Primer error: Incidió el tribunal de instancia al entender que, a los fines de aplicar una ordenanza de arbitrios municipales, en el caso de una obra pública, la fecha determinante es la del contrato y no la de la subasta. Segundo error: Habiéndose celebrado la subasta de la obra pública objeto de este pleito el 28 de octubre de 1992, dicha obra está exenta del pago de arbitrios, a tenor con la doctrina de Las Piedras Construction Corp. v. Municipio de Dorado, supra, por lo que el tribunal de instancia incidió al determinar lo contrario. Tercer error: Incidió el tribunal de instancia al aplicar retroactivamente la segunda ordenanza Núm. 37 (Serie 1993-94)."*

## II

Los procedimientos para la adjudicación de subastas tienen como propósito primordial que al celebrarlas se permita la competencia por medio de proposiciones formales, de tal manera, que el estado pueda conseguir buenos precios para realizar sus obras. *Mar-mol Company, Inc. v. Administración de Servicios Generales,* **90 J.T.S. 111**, pág. 7985, opinión de 29 de junio de 1990; *Justiniano v. E.L.A.,* 100 D.P.R. 334, 338 (1971). La adjudicación de la buena pro dependerá de la existencia de una oferta que contenga todos los elementos esenciales para la perfección del contrato. *Prods. Tommy Muñiz v. COPAN,* 113 D.P.R. 517 (1982). *"[A]l requerirse que la subasta y el contrato se adjudiquen al postor más bajo se evita que haya favoritismo, corrupción, extravagancia y descuido al otorgarse los contratos." Justiniano v. E.L.A., supra.* Véase también, *Mar-mol Company, Inc. v. Administración de Servicios Generales, supra.*

Por ende, el acto de adjudicar la buena pro al licitador más bajo crea una relación contractual que no puede ser resuelta de manera arbitraria. *Cancel v. Municipio de San Juan,* 101 D.P.R. 296, 299 (1973). No obstante, una agencia tiene la potestad de revocar la adjudicación de la subasta antes del otorgamiento formal del contrato de ejecución cuando no se ha cumplido con las condiciones establecidas por la agencia. *Justiniano v. E.L.A,* pág. 340, *supra.*

El 3 de diciembre de 1992, por medio de carta, el Municipio le informó a Río Construction que se le había adjudicado la subasta y que tenía que cumplir con las disposiciones establecidas en el apartado 103.06 del Pliegos de Condiciones Generales para poderse formalizar el contrato.

El contrato se perfeccionó el 18 de diciembre de 1992, cuando Río Construction y el Municipo otorgaron por escrito el contrato de construcción. Previo al otorgamiento del contrato *"la relación entre el adjudicatario y el Municipio nunca alcanzó la dignidad ni obligatoriedad de un pacto bilateral." Cancel v. Municipio de San Juan,* pág. 300, *supra.* La fecha determinante para establecer la aplicación del esquema de doble tributación, es la fecha del otorgamiento del contrato y no la fecha en que se celebró el acto de apertura de los sobres que contenían las propuestas de los licitadores.

## III

La Constitución del Estado Libre Asociado de Puerto Rico en su Artículo VI, sección 2 dispone:

*"El poder del Estado Libre Asociado de Puerto Rico para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios, se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido... "*

Esto quiere decir, que nuestros municipios carecen de poder inherente para imponer y cobrar contribuciones a menos que la Legislatura mediante mandato *"claro y expreso"* delegue esta facultad en los municipios. *Banco Popular v. Mun. de Mayaguez,* 120 D.P.R. 692, 696 (1988); *Sucs. C. y J. Fantauzzi v. Asamblea Mun. Arroyo,* 30 D.P.R. 423,431 (1922).

A tenor con lo anteriormente expuesto, nuestra Legislatura aprobó la *"Ley de Municipios Autónomos",* Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. secs. 4.001 *et seq.* otorgándole a los municipios el poder de imponer contribuciones. El Artículo 2.002 de la referida ley lee como sigue:

*"Además de las que se disponga en otras leyes, el municipio podrá imponer y cobrar contribuciones y tributos por los conceptos y en la forma que a continuación se establece:*

*"(d) Imponer y cobrar contribuciones, derechos, licencias, arbitrios y otros arbitrios e impuestos, tasas y tarifas razonables dentro de los límites territorriales del municipio, compatible con las leyes del Estado Libre Asociado de Puerto Rico, incluyendo, sin que se entienda como una limitación, por el establecimiento en vías públicas municipales, por la apertura de establecimientos comerciales, industriales y de servicios, por la construcción de obras y el derribo de edificios, por la ocupación de vías públicas municipales y por el recogido y disposición de desperdicios."* (Subrayado nuestro).

La ley Núm. 113 de 10 de julio de 1974, conocida como *"Ley de Patentes Municipales"* enmendada por la Ley Núm. 93 de 17 de noviembre de 1992, en su Artículo II según enmendado lee en lo pertinente como sigue:

*"La facultad que por esta ley se confiere a los municipios para imponer patentes sobre el volumen de negocios realizados por personas o entidades dentro de sus límites territoriales en forma alguna se interpretará que priva o limita la facultad de los municipios para imponer contribuciones, arbitrios, impuestos, licencias, derechos, tasas, y tarifas sobre cualesquiera otros renglones, no incompatibles con la tributación impuesta por el estado, cuando los objetos y actividades sujetos a tributación se lleven a cabo dentro de los límites territoriales del Municipio. La tributación de un objeto o actividad se considerará un acto separado y distinto no incluido o inherente al tributo que se impone sobre el volumen de negocio que sirve de base para imponer las patentes."* (Énfasis suplido).

En Puerto Rico durante los últimos años se ha desarrollado una corriente de pensamiento que

favorece una interpretación más amplia de los poderes delegados a los municipos para imponer tributos de forma tal que los municipios puedan brindar un mejor servicio a su cuidadanía. *Lever Bros. Export Corporation v. Alcalde de San Juan,* **96 J.T.S. 29,** pág. 761, opinión de 7 de marzo de 1996; *Federal Deposit Insurance Corp. v. Municipio de San Juan,* **93 J.T.S. 133,** pág. 11148, opinión de 28 de octubre de 1993.; *Sears Roebuck de P.R. v. Mun. de San Juan,* 122 D.P.R. 26, 38 (1988); *Molinos de P.R. v. Municipio de Guaynabo,* 105 D.P.R. 470, 474 (1976). Anteriormente prevalecía un enfoque restrictivo ya que se entendía que no se podía interpretar por analogía o de forma implícita cuál era la intención de la Legislatura cuando delegaba un poder tributario a los municipios. *Banco Popular v. Mun. de Mayaguez, supra.,* pág. 697.

Al así actuar, la Legislatura dejó claramente establecido en la Ley de Patentes Municipales que los municipios tienen autoridad delegada para imponer un esquema de doble tributación. Por lo tanto, a partir del 17 de noviembre de 1992, el Municipio podía imponer un arbitrio de construcción sobre el mismo evento económico por el cual se pague patentes municipales.

A la fecha en que se otorgó el contrato entre Río Construction y la ACT, estaba permitido el esquema de doble tributación, por lo que, el Municipio actuó dentro del poder delegado. *Nogama Construction Corp. v. Municipio de Aibonito,* **94 J.T.S. 73,** págs. 11960-11961, opinión de 18 de mayo de 1994; *Las Piedras Construction Corp. v. Municipio de Dorado,* **94 J.T.S. 3,** pág. 11436, opinión de 28 de enero de 1994.

Por otro lado, para la fecha de la adjudicación de la subasta estaba en vigor la Ordenanza Núm. 37, Serie 1989-90, que imponía por concepto de arbitrio de construcción, el uno porciento (1%) del valor licitado de la obra. El 21 de diciembre de 1993, catorce meses después de la subasta y trece meses después de la autorización a los municipios para imponer doble tributación, el Municipio aprobó la Ordenanza Núm. 37, Serie 1993-94, aumentando a dos y medio porciento (2.5%) el tipo contributivo a pagarse por concepto de arbitrio de construcción, con efecto retroactivo al 5 de octubre de 1977.

El Tribunal de Instancia determinó que la Ordenanza Núm. 37 no puede extender su efectividad más allá de la fecha en que la Legislatura permitió a los municipios imponer un esquema de doble tributación. Ante nos, Río Construction sostiene que la Ordenanza Núm. 37 no puede tener ningún efecto retroactivo a falta de una delegación expresa de la Legislatura facultando a los Municipios a hacer ordenanzas con efecto retroactivo y en la alternativa el efecto retroactivo de la ordenanza es inconstitucional porque priva a la apelante de su propiedad sin el debido proceso de ley.

El Tribunal Supremo se ha expresado en ocasiones anteriores sobre esta situación, dejando claramente establecido que las leyes que imponen contribuciones con efecto retroactivo y válidas per se. *González Guisti v. Tesoro de Puerto Rico,* 76 D.P.R. 263, 267 (1954); *Tesoro de Puerto Rico v. Tribunal de Contribuciones,* 70 D.P.R. 99, 112 (1949). No olvidemos que el derecho tributario no se rige por el Código Civil sino por el estatuto fiscal. *WAPA v. Srio. de Hacienda,* 105 D.P.R. 816,820 (1977); *Rexach v. Srio. de Hacienda,* 96 D.P.R. 913, 918 (1969).

Como dijera el Juez Brandeis en su opinión disidente en el caso de *Untermyer v. Anderson* (1928), 276 U.S. 440, 449:

*"La necesidad de rentas que tiene el gobierno se ha considerado hasta ahora como una justificación suficiente para imponer tributos con efectos retroactivos siempre que la imposición parezca estar en consonancia con la justicia, y las circunstancias fueren tales que ordinariamente no resultare opresiva."* Pyramid Products, Inc. v. Tesorero de Puerto Rico, 64 D.P.R. 828, 847 (1945).

No perdamos de perspectiva que las contribuciones son necesarias para sostener las obras del gobierno y se les cobra a aquellas personas que gozan del privilegio de disfrutar de sus beneficios, razón por la cual deben también *"soportar sus cargas".* Ballester Ripoll v. Tribunal de Apelaciones de Contribuciones, 61 D.P.R. 474, 502 (1943). Cuando un contribuyente paga sus contribuciones pierde parte de su propiedad pero el *"estado le concede distintos beneficios y oportunidades y le garantiza la protección estadual".* Tesorero de Puerto Rico v. Tribunal de Contribuciones de Puerto Rico, 74 D.P.R. 274,283 (1952).

*"Debe recordarse que las contribuciones no son deudas en el sentido de que una vez establecidas y pagadas toda responsabilidad ulterior del individuo para con el gobierno ha cesado...La contribución proporcional de las personas y la propiedad, puesta en vigor y fijada por la autoridad del Estado para el sostenimiento del gobierno y de todas las necesidades públicas, y mientras existan necesidades públicas así también existirá la responsabilidad del individuo para contribuir a ellas. La obligación del individuo para con el Estado es continua y en proporción a las necesidades públicas. La sabiduría humana no puede siempre prever cuáles habrán de ser las necesidades del futuro..."* (énfasis nuestro); *Sucs. C. J. Fantauzzi v. Asamblea Mun. Arroyo supra.*, págs. 439-440.

Una contribución no es una penalidad ni constituye una obligación contractual, más bien es una forma de prorratear los costos del gobierno entre sus cuidadanos; costos que pueden estar relacionados a beneficios y privilegios obtenidos en el pasado. Por esto, el debido proceso de ley sólo requiere que el estatuto no sea arbitrario, irrazonable o caprichoso y que los medios utilizados adelanten los propósitos que buscan lograr. Veáse, *Ibid.*, págs. 284-285; *Salas v. Municipio de Moca,* 119 D.P.R. 625, 633 (1987).

Río Construction reconoce que el Municipio tiene potestad para imponer contribuciones pero alega que la aplicación retroactiva de la Ordenanza Núm. 37 es inconstitucional.

## IV

Procede entonces que consideremos los planteamientos sobre la validez constitucional de una ordenanza que tiene una aplicación retroactiva.

Río Construction sabía que al momento de otorgarse el contrato los municipios tenían poder para imponer arbitrios de construcción. También, tenía conocimiento que la Ordenanza Núm. 37, Serie 1989-90, imponían un porciento (1%) por concepto de arbitrio de construcción. No obstante, al momento de contratar la demandante no sabía que la Asamblea Municipal aprobaría una ordenanza para aumentar el porciento cobrado por concepto de arbitrios de construcción. Entendemos, pues, que el efecto retroactivo de la nueva ordenanza, aumentando el porciento a dos y medio (2.5%), resulta tan oneroso y opresivo que nos lleva a *"traspasar la limitación constitucional". Ballester Ripoll v. Tribunal de Apelaciones de Contribuciones, supra.*, pág. 503.

Nuestra Constitución en su Artículo II, Sección 7, dispone:

*"Se reconoce como derecho fundamental del ser humano el derecho a la vida, a la libertad y al disfrute de la propiedad... Ninguna persona será privada de su libertad o propiedad sin el debido proceso de ley, ni se negará a persona alguna en Puerto Rico la igual protección de las leyes. No se aprobarán leyes que menoscaben las obligaciones contractuales."* (Subrayado nuestro).

Como puede verse, el pago de contribuciones puede considerarse como una privación de la propiedad y un menoscabo de las obligaciones contractuales contraídas entre Río Construction y el ACT, por razón de que al momento de hacerse la oferta el apelante desconocía que el costo total de la obra de construcción aumentaría como consecuencia del aumento en contribuciones. Es decir, que una ordenanza municipal aprobada posteriormente iba a variar sustancialmente los términos del contrato original.

La disposición constitucional en controversia no significa que el Estado esta impedido de reglamentar en beneficio del interés público. Y es que no todo menoscabo contractual ▪ está en conflicto con la prohibición constitucional. *Bayrón Toro v. Serra,* 119 D.P.R. 605, 619 (1987).

*"La función del tribunal consiste en establecer un balance razonable entre el interés social de promover el bien común y el interés, también social, de proteger las transacciones contractuales contra la aplicación arbitraria e irrazonable de las leyes (cita omitida)... Cuando nos confrontamos con la situación en que el estado modifica sus propias obligaciones, el escrutinio judicial debe ser más cuidadoso para asegurar que la actuación del Estado no sólo sea en beneficio propio. (citas omitidas)... En estos casos la modificación además de ser razonable, debe ser también necesaria para adelantar un propósito gubernamental importante. (citas omitidas)...Al evaluar, pues una modificación a una obligación del gobierno debemos determinar en primer lugar si estamos ante*

*una obligación contractual protegida por la constitución. En segundo lugar, es preciso que la modificación en la obligación en efecto constituya un menoscabo de una obligación contractual. Una vez determinado que existe un menoscabo, entonces debemos precisar si el mismo viola la garantía constitucional (citas omitidas)... Si éste surge como consecuencia de una modificación razonable y necesaria dirigida a adelantar un interés público, sostendremos su validez.(citas omitidas y subrayado nuestro). Ibid., págs. 620-621. Véase, también, City of Charleston v. Public Service Comn of West Virginia, 57 F.3d 385 (4th Cir. 1995); Baltimore City Lodge No. 3 Fraternal Order of Police v. Mayor and City Council of Baltimore City, 801 F.Supp. 1506 (D.MD. 1999); Nieves v. Hess Oil Virgin Island Corp., 819 F.2d 1237 (3rd Cir. 1987)."*

El 18 de diciembre de 1992, Río Construction y la ACT otorgaron un contrato de construcción sujeto a los términos presentados en la oferta de subasta y a las condiciones requeridas por la ACT para perfeccionar el acuerdo contractual. La existencia de dicho contrato no está en disputa. Una vez determinada la existencia del contrato hay que resolver si la aplicación de la ordenanza opera como un menoscabo sustancial de la obligación contractual. Véase, Baltimore City Lodge No. 3 *Fraternal Order of Police v. Mayor and City Council of Baltimore City, supra.*, pág. 1509.

Al momento de perfeccionarse el contrato y realizarse la obra pactada, el pago requerido bajo la Ordenanza Núm. 37, Serie 1989-90, era de $29,198.29 mientras que el pago requerido bajo la Ordenanza Núm. 37, Serie 93-94, es de $55,495.71. ▪ Esta diferencia en arbitrios afecta adversamente el costo del proyecto y en consecuencia disminuye sustancialmente el margen de ganancias estimado por el licitador.

Nuestra Legislatura reconoce la importancia de darle certeza y estabilidad a las obligaciones contractuales contraídas por las partes. Por eso, se exige que dicha relación sólo quede subordinada *"al poder de razón del estado cuando exista razones superiores de orden público...'Mientras más grave sea el mal social que el estatuto intenta remediar dijimos- más grande es el interés público envuelto, por tanto, mayor justificación para su aplicación retroactiva."*(Subrayado nuestro). *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 79(1983). A manera ilustrativa de una válida aplicación retroactiva se mencionan casos de emergencias creadas, entre otras razones, por un desastre de la naturaleza, por una inflación o recesión económica o por un conflicto bélico.

*Ibid.*

*"Finding a substancial impairment is merely a threshold step toward resolving the more difficult question of whether that impairment is permitted under the Constitution. United States Trust Co., supra. This more difficult question is resolved by balancing the contractual rights of the individual against "the essential attributes of sovereign power necessarily reserved by the States to safeguard the welfare of their citizens." Baltimore City Lodge No. 3 Fraternal Order of Police v. Mayor and City Council of Baltimore City, supra.*, pág. 1510.

La Ordenanza Núm. 37 tiene como interés primordial aumentar sus recursos económicos para atender responsablemente las necesidades del municipio. La exposición de motivos de la ordenanza señala el interés legítimo del Municipio de obtener fondos para sufragar los gastos y servicios municipales y *"fomentar el progreso y bienestar de su población."* Véase, Exposición de Motivos de la Ordenanza Núm. 37, Serie 1993-94.

El Municipio tiene un propósito legítimo de procurar obtener los fondos necesarios para el progreso y bienestar de sus cuidadanos. ▪ Pero ello no debe ser utilizado como muletilla para indiscriminadamente inyectar un elemento de incertidumbre a la relación contractual entre las partes. *"When the state is a contrating party, the legislative judgment is subject to stricter scrutiny than when the legislation affects only private contracts. United States Trust, 431 U.S. at 25-26, 97 S.CT. at 1519-20". Nieves v. Hess Oil Virgin Island Corp., supra.*, pág. 1249. Aceptar que un municipio tiene poder absoluto para aumentar los arbitrios o añadir obligaciones a los contratistas que desarrollan obras de construcción en los límites jurisdiccionales de su municipio sin considerar el acuerdo entre ambos, crearía una inestabilidad en la contratación para obras municipales.

*"In applying this standard, however, complete deference to a legislative assessment of*

*reasonableness and necessity is not appropriate because the States self-interest is at stake. A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligation whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all". United States Trust Co., 431 U.S. at 25-26, 97 S.Ct. at 1519... Baltimore City Lodge No. 3 Fraternal Order of Police v. Mayor and City Council of Baltimore City, Ibid.*, pág. 1511."

El Municipio tiene a su alcance otros mecanismos para recolectar fondos que no menoscaben las obligaciones contractuales preexistentes y violen la garantía constitucional. No basta mencionar que la ordenanza persigue un fin público; hay que demostrar que el estatuto es necesario para remediar un mal social grave y no existen otras alternativas menos onerosas para sostener su validez. Tomando en consideración los hechos particulares del presente caso, no estamos ante una circunstancia que amerite sostener la validez de la aplicación retroactiva de la Ordenanza Núm. 37, Serie 93-94.

Concluimos que la fecha determinante a los fines de aplicar el esquema de doble tributación y la Ordenanza Núm. 37, Serie 1989-90, es la fecha del otorgamiento del contrato y no la fecha de la adjudicación de la subasta. Reconocemos que las leyes y ordenanzas municipales pueden tener efecto retroactivo. No obstante, erró el Tribunal de Instancia al otorgar efecto retroactivo a la Ordenanza Núm. 37, Serie 1993-94, debido a que la misma menoscaba las obligaciones contractuales contraídas entre Río Construction y la ACT en violación a lo dispuesto en el Artículo II, Sección 7 de nuestra Constitución y su equivalente en la Constitución Federal.

Por los fundamentos anteriormente expuestos, se modifica la sentencia del Tribunal de Primera Instancia, Sala Superior de Caguas.

El Juez Rivera Pérez concurre con el resultado sin opinión escrita.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Notifíquese por la vía ordinaria.

Aida Ileana Oquendo Graulau
Secretaria General

## ESCOLIOS 96 DTA 116

**1.** Hemos adoptado el esquema utilizado por el Tribunal Supremo Federal para determinar cuándo la acción u omisión gubernamental viola la prohibición constitucional: *"Initially, a court must determine whether state law has in fact impaired any contract; if so, it must then determine if the contract was "substantially impaired;" if the state law is found to constitute a substantial impairment of the contract, a court must determine "whether that impairment is nonetheless permissible as a legitimate exercise of the state's sovereign powers."* (FN6) *Id.;* Spannaus, 438 US. at 244, 98 S.Ct. at 2722; United *States Trust, 431 (U.S. at 17, 97 S.Ct. at 1515. Only if there is a contract which has been substantially impairment, is there a violation of the Contract Clause." City of Charleston v. Public Service Com'n. of West Virginia*, 57 F.3d 385, 391 (C.A.4 (W.Va.) 1995).

**2.** Según surge del expediente, el 7 de octubre de 1993 la apelante recibió una notificación del Municipio informándole que adeudaba la cantidad de $29,198.29 por concepto de arbitrios de construcción. Para computar dicha imposición se tomó en consideración el costo total del proyecto valorado en $ 2,919,828.70, y el tipo contributivo de un porciento (1%) según lo dispuesto en la Ordenanza Núm. 37, Serie 1989-90. En marzo de 1994, la carta cursada por el Municipio solicitando el pago de los arbitrios adeudados a tenor con lo dispuesto con la nueva Ordenanza Núm. 37, Serie 1993-94, señala como costo del proyecto la cantidad de $2,219,828.70, razón por la cual, la totalidad de la deuda asciende a $ 55, 495. 71.

**3.** *"Las patentes municipales representan la segunda fuente de ingresos propios de los municipios de Puerto Rico y junto con los ingresos provenientes de las contribuciones proveen al municipio la base para formular su presupuesto de gastos. La misma representa una fuente potencial para el crecimiento de los recursos*

*ecónomicos municipales que son necesarios para mejorar los servicios que prestan a la cuidadanía, cuyo costo se ha incrementado sustancialmente durante los últimos años....De manera que si el propósito primordial de la Ley de Patentes Municipales, supra, es generar ingresos para el beneficio de la comunidad, entonces dicho estatuto debe ser interpretado de modo que se cumpla y facilite el mismo, como lo hemos hecho aquí. Por otro lado, también es de aplicación aquí el principio elemental de Derecho Tributario de que las deducciones, los créditos y los reintegros, por ser gracias legislativas al contribuyente, se interpretan restrictivamente en contra de aquel que las invoca....*" (citas omitidas). *Federal Deposit Insurance Corp. v. Municipio de San Juan,* **93 J.T.S. 133**, págs. 11150-11151, opinión de 28 de octubre de 1993.